The last argued case on the calendar, there's another case on submission, but the last argued case is Patterson v. Raymours Furniture Company. Thank you. Mr. Rubin. Thank you, Your Honor. May it please the Court, Michael Rubin for the Plaintiffs. Raymours Furniture requires all of its employees, as a condition of employment, to be bound by a handbook policy that requires them to bring any workplace legal claim they have against their employer on an individual basis. It prohibits not only class actions, but also collective actions, representative actions, and any combination of two or more workers seeking to adjust their legal disputes with their employer in any form of arbitration or court. If that were a stand-alone policy set forth in an individual employment contract, posted in the workplace, in the handbook, that would be flatly unlawful under Sections 7 and 8A1 of the National Labor Relations Act and Sections 2 and 3 of the Norris LaGuardia Act, both of which flatly prohibit employer restrictions on employees engaging in collective activity, including concerted legal action for mutual aid and protection. So the question here is whether Raymours can insulate from invalidity, from facial invalidity, a policy prohibiting concerted legal activity by inserting that prohibition in an arbitration agreement imposed as a condition of employment, and then saying that the FAA, the 1925 Federal Arbitration Act, overrides the protections established by Congress in the 1932 Norris LaGuardia Act and the 1935 National Labor Relations Act. Now, when faced with this precise issue, the Seventh Circuit, disagreeing with the Fifth and the Eighth in the recent Lewis v. Epic Systems case, said, no, the rights established by Congress in 1932 and 1935 are controlling here. Workers cannot be precluded from joining together to present workplace disputes on a combined joint or class action basis any more than they can be prohibited through individual contract from engaging in protected activity to picket, to boycott, to petition for redress of grievances. But Judge Wood in the Seventh Circuit also thought she was disagreeing with us. She said that the Second Circuit is one of the other circuits that has gone the wrong way on this issue, citing Sutherland. Now, I don't want to distract you necessarily from what are very interesting arguments that I might have a lot of sympathy with if I were writing on a clean slate. But it seems to me it behooves you pretty early on to get to why we are not bound by Sutherland, at least in the absence of an en banc rehearing. I would be delighted to, Your Honor. The footnote eight in the per curiam decision in Sutherland rejected. Before you get to footnote eight, I went back and looked at the briefs that were presented to the court in Sutherland and saw presented in a fairly full-blown form the arguments that appear in your brief today arguing that the NLRA prevents the kind of policy that the employer put in place here. So it does look to me, and correct me if I'm wrong, that these arguments were fully presented to the court, even though footnote eight didn't spell out answers to all of the arguments. Is that correct? I wouldn't say fully presented, but the gist of the arguments were certainly presented. There was, for example, a discussion of some of the subsequent board cases. Obviously, a lot has transpired since then, but the question is not whether Sutherland is right or wrong. The question is whether this panel is bound by Sutherland, and let me address that. My understanding, both from Supreme Court law and Second Circuit law, is where the underpinnings of a panel decision have been eroded by subsequent Supreme Court decision or subsequent agency action that requires deference, the panel is not bound by a prior panel decision. So there were two underpinnings to the footnote eight in Sutherland. The first was the board may have lacked a quorum, citing the D.C. Circuit case Noel Canning, which was then reversed by the United States Supreme Court. So there has been an intervening Supreme Court decision. Secondly, Sutherland was decided at a time when only the D.R. Horton case had been decided. There have now been 70 board decisions. It's not just the number of the decisions that are important, but the board, which, in fact, is entitled to deference, as Mr. Hiller will point out, when construing its own statute, the National Labor Relations Act, has expanded upon and extended the analysis. So it's appropriate for the panel to take a fresh look or either— But it's the same policy. It's the same legal conclusion that was in D.R. Horton. That's right. And that's why I think a case like United States v. Hardwick, citing the Ninth Circuit's concurring decision by Judge Kaczynski and Johnson, provides guidance, which is where not only do you have an intervening Supreme Court decision and not only do you have additional agency— Well, but the intervening Supreme Court decision may knock out an alternative reason. Moreover, the D.R. Horton decision may have been decided without a proper quorum. That's okay. Maybe that's wrong. But if that wasn't even in the footnote, that wouldn't change that the panel rejected the D.R. Horton reasoning, despite the deference that was otherwise owed to the NLRB. I guess we don't know that. When there were two statements made, we don't know whether the Court would have reached the first one. Obviously, stating that the Board has no deference, the prior per curiam panel never addressed the analysis. So even if there were no deference, there still has to be independent review by the panel. But if Your Honors feel as though the prior panel decision is binding, the appropriate action on your part would either be request en banc review or, as the Seventh Circuit did in Epic Systems, if you note the footnote marked by a cross, submit the proposed decision to the Court as a whole to see whether any judge on the Second Circuit requires en banc consideration of this issue. It's a procedure that— You take our decision in cheeks against Freeport Pancake House, applying Brooklyn Savings Bank v. O'Neill, to require the District Court to review settlements in FLSA cases for fairness, in effect chips away at settlement. Chips away at what, Your Honor? In other words, we held that it was not enough for a contract to settle a case, that someone who brought an FLSA case was entitled to have a District Court review of fairness before that contract of settlement would be appealed. I think it does, Your Honor. I think that the anti-waiver provisions are very strong, and they're the same anti-waiver provisions that apply in the NLRA and NLGA context in light of the subsequent decisions by other courts. Can I hire an intern to do all the kind of work of a law clerk and not pay the intern? No, you cannot, Your Honor. Why? It's a private contract. It doesn't settle and allow a waiver. Sutherland—certainly our position is that Sutherland is— I don't think they said if you have a right to opt in, you have a right to waive the opt-in. Sutherland is plainly wrong for all the reasons we set forth in the brief, Your Honor. Whether the panel is bound by it or not, whether it's going to take an en banc review is, I believe, the question that Judge Lynch asked. Certainly, for example, the right to refrain under Section 7, if that were to require the enforcement of prospective waivers of the right to engagement and asserted activity, the whole prohibition against yellow dog contracts would be eviscerated. It has been a bedrock principle of federal labor law from the outset that individual employees cannot be compelled to waive their right to engage in concerted protected activity for mutual aid and protection, which is what J.I. Case and National Liquorice and the plain language of the Norris-LaGuardia Act case say. No, you cannot, under any circumstances, as an employer, compel an individual by separate contract to give up the right to engage in concerted activity to work with coworkers in pursuing workplace rights for mutual aid and protection. Just to make sure I understand your answer to Judge Lynch's question. Yes. What has happened between the issuance of Sutherland and the presentation of this case before us today is that the NLRB has reiterated its position with a full quorum. Is that right? Is there anything else? I mean, the Seventh Circuit issued its decision, but that's different from— The Seventh Circuit issued its decision. The Supreme Court decided with Noel Canning, and the board— But on the merits of this, of the— It's not just that it reiterated the holding. Judge Lynch is absolutely right there. But its analysis is deeper, different, and to the extent the Second Circuit cases require panels to take into consideration and defer to agency decision-making when there are new agency decisions, I would posit that Murphy Oil, on-assignment staffing services— But didn't the footnote also suggest that we don't owe the board much deference in this circumstance? It quotes the U.S. Supreme Court saying we've never deferred to the board's remedial preferences where such preferences potentially trench upon federal statutes and policies unrelated to the NLRA. So what you're saying is we look at the FAA and we look— That question actually answers your previous question because, yes, one of the ways the board expanded and deepened its analysis was by responding precisely to cases like Southern Steamship, Hoffman Plastic Compounds, and it explained why those cases involved discretionary remedial orders issued by the board, not determinations as to what constitutes an unfair labor practice, not determinations as to whether there has been a substantive violation of the NLRA. The question in each of those cases was what is the extent of the board's power under Section 10 of the Act to implement remedial relief within the scope of its discretion? And the Supreme Court said you have a limit on the remedies you can impose once you find an unfair labor practice. You can't impose a remedy that directly violates an affirmative right established by another federal statute. So one of the things the board has done since Sutherland, it has made clear, and this erodes that underpinning of the Sutherland footnote, that deference is required because that line of cases in fact doesn't apply to what the board did. The board explained that what it was doing was not imposing a remedy. The board explained that what it was doing, in fact, was construing the Act that the Supreme Court and city disposal services, for example, has said was within the board's discretion to construe, and applied it to determine whether there was a substantive violation of the core foundational rights created by the National Labor Relations Act. That is an aspect of the board's analysis that wasn't in D.R. Horton, wasn't considered by the court in Sutherland, and is a basis for the court to take a second look at the fundamental question of whether this court, like all other courts of appeal, has to defer to the board's construction of its own Act. Do you think that relieves us of the obligation of... I believe that gives you the authority to decide this case by giving it a fresh look in light of the authorities presented in our brief, in the board's brief, and in the labor scholar's brief. Including by addressing the Norris LaGuardia Act principles set forth in our brief and set forth in the labor scholar's brief, because there, Congress stated very clearly after the enactment of the Federal Arbitration Act, not only that any undertaking or promise in violation of the public policies set forth in the National Labor and the Norris LaGuardia Act shall not be enforceable in any court of the United States, which answers the question directly, again, as the Seventh Circuit pointed out, but it also states in Section 15 of the Norris LaGuardia Act that any act and parts of acts in conflict with the provisions of this chapter of Norris LaGuardia, which includes Section 2 and Section 3, are repealed. Ultimately, this case comes down to a question of statutory construction and congressional intent. Congress made clear its intent in the Norris LaGuardia Act, as well as in the National Labor Relations Act, as construed not only in Supreme Court decisions, but by the NLRB, which has delegated the task of construing the NLRA, which holds that concerted legal activity is protected activity. That cannot be the subject of waiver through individual contract imposed by an employer in a given case. If, in fact, there were a conflict between the two federal labor statutes and the previously enacted Federal Arbitration Act, that conflict would have to be resolved in favor of the labor statutes for the basic principle that they were enacted afterwards. Does the reenactments matter? They're almost simultaneously, but then the Federal Arbitration Act comes second. No. No. There's a distinction between reenactments and recodification. There was obviously a whole-scale recodification of the United States Code in 1948. There was a substantive reenactment of the NLRA in 1947, but the Supreme Court and other courts have made clear that a recodification without substantive intent does not constitute a reenactment, and we cited and quoted the legislative history. You're saying the FAA reenactment, in quotes, was only a recodification? It was. Well, the NLRA, of course, it's got to do with all the amendments that come in in 1947, as well. That's correct, but even without the 1947 amendments, that was recodified as well. The entire United States Code was recodified, and none of that was substantive, and certainly there was nothing substantively reenacted in the FAA. So those are latter statutes. And besides, you've got the language of Section 15 of the Norris-LaGuardia Act that says that any inconsistent statutory provisions are hereby repealed by the Norris-LaGuardia Act, so that's an expression of a congressional intent. But the goal here is to avoid statutory conflict. Implicit repeal is disfavored. The responsibility of this court or the en banc court, if that's the way it has to go, is to try to reconcile the two statutes, and as the Seventh Circuit correctly said, the way to do that is by looking at Congress's own plain language. In the sense that there are other issues that go into whether there should be an en banc rehearing, and one is whether it's a waste of time to have a bump in the road on the way to the Supreme Court, where there's already a circuit conflict and where all the en banc court would do is, assuming it agrees with you, flip us from the wrong side of that debate to the right side. Potentially, but I would note that there have been no cert petitions filed as yet. While it is perhaps inevitable that one of these cases will at some point go to the Supreme Court, no one has yet pulled the trigger on a cert petition. There have been extensions of time requested and granted in each of the cases. Of course, depending on how the election goes, one side or the other might want to duck it, and it's going to be interesting to see who it is that would, if they lose, want to take this to the Supreme Court. Those are all matters that are above my pay grade, and you folks will be in the business of trying to figure that out. Can I just get another quick point of information before you sit down? Of course. 1966 was when there were significant amendments to Rule 23, but I don't really know when Rule 23 and the notion of class actions first began to be current. Right. In my notes say that in 1938 there was the original version. Absolutely. At that time, so this is the same time as the Norris LaGuardia Act and the NLRA are being passed in the middle of the 30s, the notion of class action arbitration or collective action for adjudication. That's right, and I would refer your Honor to Professor Calvin's 1941 University of Chicago Law Review article, which was cited in the Seventh Circuit opinion that goes through that history. And, of course, because this prohibition extends not just to class actions but to any form of combination of two or more workers, what is even more relevant than the fact that the modern class action wasn't created until 1938 and revised in 66 is the fact that joint actions go back to medieval times. They're certainly prevalent at common law. Representative actions are commonplace. And in the arbitration process, we know there are representative actions all the time because that's what collective bargaining agreement arbitrations customarily involve when you're talking about a labor contract. But, yes, the class action in its modern form first went into effect in 1938, although, as Professor Calvin points out, there were counterparts to the class action that long preceded that. And our position, of course, is that all the Board is doing by protecting this particular access to this avenue is the same thing we do in a picketing case, saying once you've got a sidewalk, you're allowed to picket on the sidewalk subject to reasonable time, place, and manner restrictions. Is there something in the legislative history of the NLRA that suggests that that kind of residual clause about other concerted activity was meant to speak to adjudication as opposed to the general collective bargaining process? I don't recall anything in the legislative history. Certainly, there are plenty of cases that say that, that refer to that, including the Supreme Court cases that we cited, a whole host of Board cases, and cases from most of the circuits. But there's no reason why you would distinguish between legal activity, grievance activity, picketing, and hand-billing activity. This case would be the same, for example, if Ray Morris Furniture had said, you have to agree individually not to picket, not to strike, not to boycott, not to engage in any of the more conventional forms of concerted activity. But any dispute that you might want to picket over, you have to arbitrate on an individual basis instead. Anything that might be the cause of a group boycott, you would have to individually arbitrate instead. And that's obviously not permitted by the National Labor Relations Act or the Norris-Laguardia Act. Supposing after the clauses were promulgated throughout Ray Morris, a union came into play, and as an exclusive bargaining agent, the union would want to litigate the issue that is posed in this case. Would a motion made by Ray Morris be successful, but the union had no standing? No, no. But it would be inconsistent with the clause, wouldn't it? Right, and the union has standing to represent the interests of its members. Another point of inconsistency. Yes, and what J.I. Case and National Liquorists make clear is you can't have an individual contract that undermines collective rights. So while individuals can delegate to the union the right to give up prospectively certain rights, and Justice Brennan said this in city disposal systems, a union can give up the right to strike, for example, in exchange for concessions subject to the duty of fair representation. But an individual contract certainly can't thwart the collective will as expressed by the designated exclusive bargaining representative. All right, thank you very much. We kept you over your time. We'll hear from the Secretary of Labor, not in person, but through his attorney. May it please the Court, Joel Heller for the National Labor Relations Board as amicus. The NLRA protects employees' right to act concertedly. Ramor's policy requires that employees act individually. The policy thus violates the NLRA's prescription of interference with Section 7 rights and is thus an illegal contract under federal law. The board and the courts have long held that any prospective individual waiver of Section 7 rights is an unfair labor practice, and that is a determination for which the board is entitled to significant deference as the agency tasked with interpreting the NLRA. Similarly, the board's determination, which has support in the courts, that concerted legal action is protected under Section 7, which protects the right to engage in concerted activity. That determination is similarly entitled to significant deference. Indeed, Section 7, the right to engage in concerted activity, is really the core of the NLRA. Everything else extends from that principle, including Section 8A1, which prohibits interference with that right. And as the Supreme Court held in national licorice, that includes these individual prospective waivers of rights like the right to strike, the right to bring grievances, or the right to challenge workplace disputes on a concerted basis. And the board has long held that all sorts of these types of waivers are unlawful. If it says you cannot join a union, you cannot go on strike, you cannot bring board charges, and in this case, you cannot bring any kind of concerted legal action. So really, it's the application of NLRA principles that does most of the work in this case. Once it is established that Raymour's policy is an illegal contract, and it's well settled, of course, that the federal courts will not enforce illegal contracts, including those contracts that violate the NLRA, the court explained as such in Kaiser Steel. The only question left at that point is whether there should be a different result, whether courts should enforce illegal contracts, simply because they also use the word arbitration. And given the FAA's saving clause, the answer has to be no. Raymour's cannot do through arbitration what Congress has expressly prohibited it from doing under the NLRA. Illegality is a generally applicable contract defense, and it applies to knock out this policy, but also employer policies that require individual bringing of claims that say nothing about arbitration. The board said as such in decisions that post-date the Sutherland decision, making clear that this really is a generally applicable principle. The problem with individual arbitration agreements for the board is not arbitration. It's individual, because the right that Section 7 gives to employees is the right to engage in concerted activity. It is, by nature, a collective right. And so that includes the ability to discuss with fellow employees, to appeal to them to join in some kind of concerted action when faced with a workplace dispute. But what Raymour's policy does is nip that process in the bud by picking off individual employees one by one at the outset, such that they are not able to respond to those appeals to decide whether to join in a particular legal action. And that is precisely what the NLRA forbids employers from doing, from interfering. I'm not sure about this, but I don't see anything in Raymour's policy that says a worker is forbidden to say, you know, we have this grievance, and I'm going to file a claim in arbitration, and you should too. And we should all do that, because we really all should work together on this. All it says is that if every employee then files an arbitration, the arbitrators will decide each case individually, right? Well, two responses to that. First, from the text of the policy itself, that might run into the confidentiality provision that applies to any of these, any arbitrations brought by individual employees. They might be foreclosed as a factual matter. But as a legal matter, the right to engage in concerted activity is the choice of the employer. It's not up to the employee. It is not up to the employer to pick and choose what types of concerted action its employees can engage in. So they can't say, well, no, you can't bring the claim on a concerted basis, but you can do these other things. That's simply not enough. It's for the employee to make that choice. I think we've had lots of time from both sides, so we appreciate hearing from the Secretary. But I think your time is up. Okay. Thank you for allowing the Board to participate. Good afternoon, Your Honors. My name is David Wirtz. I represent Rainbows and Flanagan. And to my right is Evan Tager here on behalf of the Chamber of Commerce. Could I ask you to start with just a question about the way Mr. Rubin started? He began by hypothesizing a provision that was not an arbitration clause, that did not say anything about arbitration, but just a policy that required the workers to not join with other workers as co-plaintiffs in a litigation. In other words, you can sue us if you like, but you have to sue us individually. And he said that would clearly be unlawful under the NLRA. Would you agree with that, or do you dispute that? All of the cases, Your Honor, arising in that context were, for example, a J.I. case decision where the individual contracts were used with the intent of fighting off a unionization effort. So there was bad intent in terms of the National Labor Relations Act. I don't think there's a single case that I know of where there wasn't some adverse employment action taken, which is to say retaliation. I think someone mentioned that, retaliation taken. Well, just an FLSA claim. In other words, an employee goes to his fellows and wants to file a collective action. The employer has a policy not for arbitration, but it just says no collective actions. You want to bring a claim against us under the FLSA? You can do so, but you have to do it by your lonesome. You're saying that could be legal? I'm not. Okay. So then that's what, putting aside precedent, the problem that I have with your argument and with the position in Sutherland is why should the FAA make a difference, given that the FAA does not say there's a national policy that arbitration is the best way to resolve disputes and everything should go to arbitration if possible. It says arbitration contracts should be respected the same as other contracts, and if there's something illegal, generally illegal, about the arbitration clause, then it falls. Unless we go to Concepcion, Your Honor. In Concepcion, I wouldn't describe it as a two-part analysis, but basically what the court is saying in that case is, okay, the savings clause, however, doesn't say those things which will interfere with what arbitration is all about, which is to say it will not disfavor that thing, that rule of law that you want to apply here. To the extent that it disfavors arbitration, it's forbidden by the Federal Arbitration Act. But you're asking to favor arbitration, aren't you, in the sense that a policy of you have to sue individually, sue in a very broad sense, is unlawful, but in arbitration it's okay to have the individual. What I have to say is that it cabins what can be illegal under the Arbitration Act itself. The Arbitration Act itself is about fostering arbitration. It's not simply about streamlined procedures and efficiency and all of that. It's about fomenting, if not fostering, arbitration. I recognize that courts sometimes say that in a very general way, but the history is courts used to be hostile to arbitration, and the FAA removes that impediment and says, hey, arbitration is fine, like any other contract. If people agree to it, it's fine. Fair enough, Your Honor, but it's been interpreted not simply to be neutral as to arbitration. That isn't the Supreme Court case law. The Supreme Court case law concepts all of these cases that we're talking about, Italian colors, going back, I think, to Moses H. Combe, Memorial Hospital, is it's about the substance of the FAA is to favor arbitration. And to the extent that you mandate class arbitration, you are disfavoring arbitration. For a whole host of reasons, including those identified by Judge Hellerstein. Are there any arbitration systems or arbitral bodies or organizations that allow class arbitration? Yes. But then why is it that mandating class availability, in at least this context where there's a special federal statute, why is that hostile to arbitration when it's the choice of the employer or the contracting parties, if you will, to say it's not just that we want arbitration. We want arbitration with this organization, with this rules, where hypothetically we could have chosen, if we thought it was a good idea, arbitration under rules that permit class actions. So it's not that arbitration is disfavored. If there are such rules available, you could have arbitration collectively. The sting here, Mr. Rubin would say, is that the employer is requiring arbitration under this variant, which is problematic under the NLRA. Well, let's say, which the NLRB has suggested, is that what's your beef? If you can individually arbitrate, that's an option A. Or we could have collective action in Rule 23.216B for an FLSA action. That turns the choice, then, about whether to arbitrate or not to the employee's lawyers. To the what? Pardon me? What? It turns the choice from a choice being made by an employer about where to litigate to a choice now being made by the employee's lawyers. But it's clear law that Lochner no longer applies in a labor management setup. It's clear law that you can't allow an employer by contract to stipulate away a right given by law. Understood. But the employer has a right to arbitrate unless Congress says no. No, the employer has a right to arbitrate if the employee agrees to it in a contract. Fair enough. If that arbitration agreement is otherwise lawful. In other words, when you say it shifts it to the employee's lawyers, I wasn't focused on that level. I was focused on the level of the contract. The employer and the employee have a right to enter a contract that is legal, and they could enter a contract that, as far as I can see, the Secretary of Labor or the NLRB would say, or I think I said to the Secretary, you're really the NLRB, right? Okay. The NLRB's position is you have a right to contract with your employees to have arbitration if you choose an arbitral system that permits collective action. And if there are such arbitral systems available, then I don't see how you can say that that requirement is hostile to arbitration. It's just hostile to forcing the employees or getting the employees to agree to act individually in arbitration. Two things you're on. I would say that if no employer, including this one, will willingly go to class arbitration, who knows what they're doing? Well, of course they don't. But no employer would willingly allow the employees to engage in collective activities they're required to by law. Understood. But that fact, the fact that the – that fact of that right to think that way is protected by the FAA to the extent that – The right to have people work together collectively is guaranteed by the National Labor Relations Act. Understood, Your Honor. But to the extent that class arbitration is inconsistent with the FAA, the FAA – But why is it? I'm sorry. Why is it? I thought you just told me that there are some systems of arbitration or some arbitral bodies to whom one could resort who allow class arbitration. So when you say the employer would not want to go to arbitration if it's class arbitration, well, fair enough. They have a right to think that or – you know, that's their preference. But the – that's – it's not that their right to have arbitration, which is protected by the FAA, is affected. It's their right to have a particular kind of arbitration, which is not inconsistent with the notion of arbitration. But there's – under Stolt-Nielsen, there's no collective arbitration to be implied. There's no collective arbitration unless you agree to it. In general, sure, of course. But in this situation, we've got – I mean, this is not like general commercial contracts where the rules might be one thing. People can agree to any kind of arbitration they want, and that's fine. There's nothing illegal about having collective arbitrations, individual arbitrations, arbitrations by religious bodies, arbitrations by commercial – any kind of arbitration you want, you can have. But in this instance, you've got a particular protected right that employees have that other people entering contracts don't have that says they're protected in their right to act collectively in pursuing their grievances. So that doesn't mean – and I take it the NLRB is not saying – I don't think even Mr. Rubin is saying that they have a right to file a class action lawsuit necessarily. They have a – as opposed to have an arbitration, they have a right to act collectively that you can't take away in the guise of shifting them from courts to arbitration when theoretically you could have arbitration and still have collective action. I guess what I would say to you, Your Honor, is what you're saying is contrary to the holding in Concepcion. But the holding in Concepcion doesn't say anything about the NLRA. No, but what it does say is that if a statute that mandates you to participate on a class basis in arbitration is contrary to the purposes of the Act, the substance of the arbitration – of the Federal Arbitration Act is to favor – that's the substance that we have. But that's a state statute. The basis of Concepcion is to exalt a contract, a contract to arbitrate and how to arbitrate. The basis of the National Labor Relations Act is to subordinate a contract to the right of collective action. So how do you square that? I guess I would say, Your Honor, is the basis – Section 7 says you cannot just allow a contract to take away a right given by the Act to a worker. I guess I would say that the – Section 7 is a big tree. It talks about the right to organize. It talks about the right to bargain. It talks about the right to be represented. And what we're talking about is a twig on that tree, which is the right to collectively adjudicate. And to the extent that there is an inconsistency with Section 7 and the FAA, which says collective arbitration is inconsistent with the Congress's intent in creating the FAA, the twig has to give. Even if the twig is enacted later and it's a twig on a very big tree with a very big policy behind it? Your Honor, on the history arguments, if you just look, Congress knows how to deal with this if it wants to. Yeah, I understand the theory of that, but why would anyone even assume there's any conflict between the FAA and the NLRA or there's some kind of need for an implied repeal? If the FAA says you can arbitrate just like any other contract, enforceable like any other contract as long as the contract is not illegal, I assume you can't, in a state that has a prohibition on certain forms of gambling, say we have a contract to gamble and any dispute under this contract should go to arbitration. Does that mean that a party can't come to court and ask for a declaratory judgment that I have to pay this debt because it's an illegal debt? I understand the analogy, Your Honor. I guess what I would say is that the overall policy of our federal government is inconsistent with the idea that I have a federal right to collectively arbitrate. That is the overall picture. I can't reconcile it any better than that, Your Honor. I do. I mean, there is a kind of conceptual conflict here, and that's going to be our job to resolve. I actually would hope that it weren't, since your court has already resolved. Well, that's right. I mean, it is our collective, as a court, responsibility to work this out somehow, but maybe we've already done so, and I don't think you have to make that argument at this moment. The only thing I would say, Your Honor, is that, yes, there have been boatloads of subsequent board decisions. This court has already held they're not entitled to deference in Sutherland. Understood. Thank you. Has this court ever decided this particular case? I beg your pardon? Is this case still pending before the board? I don't think this case is before the board. Sutherland? No, Sutherland was decided, I think, in 2013. D.R. Horton was briefed. They sought en banc review. D.R. Horton was again rebriefed. As in this case? Has not been revisited. This is the first time since Sutherland. That this court has addressed? That's correct. Is this issue before the NLRB right now? In a hundred settings, yes. Including this particular case? The NLRB continues, including in the Fifth Circuit and the Eighth Circuit. Is there an unfair labor practice proceeding? In this case, no. In this case. No? No. We're going to hear everybody in the right order, so we're going to hear next from the Chamber of Commerce, and then you'll have your rebuttal time. Thank you, Your Honors. Evan Tager for the Chamber. I think it helps conceptually to start with the premise which the Supreme Court has articulated in case after case after case, which is the FAA requires arbitration agreements to be enforced as written, which includes the class waiver. Now, there are exceptions, and the real question here is what exceptions are they invoking and have those exceptions already been taken off the table? As best I can tell from the argument, Mr. Heller is putting all his eggs in the Section 2 Savings Clause basket, and Mr. Rubin is relying on the Congressional Command Exception. So I'm going to try to address both of them and at the same time deal with some of the questions Your Honor asked. I think the Savings Clause issue is a complete red herring. The Supreme Court said in Concepcion, and yes, it's a state case, but the principles that it articulated apply with full force to everything because everything in Concepcion rests on the Court's conclusion that conditioning the enforceability of an arbitration provision on the availability of class procedures, quote, interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA. So that was the reason this ostensibly neutral principle of California law, which is that you can't have an exculpatory clause, that's why the— What about collective action? What about collective action is different from class action? They are all— All the parties are before the arbitrator. The point is that the Supreme Court in Concepcion said that arbitration, which draws, by the way, on Stolt, arbitration is by its nature bilateral. So whether it's opt-in or opt-out really doesn't— You can have more than one party to an arbitration. You could have that if all parties agree to it. But absent consent, the default is that it's bilateral. Two parties make a demand in arbitration. They can put the third party before the arbitrator by the demand. It's only a contract that limits it. Yes. It's only a contract, right? Depends on what the contract says. And if the contract is legally enforceable. Yes. So now the question— A contract that is an unfair labor practice because it infringes on Section 7 is not an enforceable contract. That is an argument that illegality is— The Federal Arbitration Association, Federal Arbitration Statute is not a constitutional clause. No. And your proposition is an argument that a class waiver in an employment arbitration agreement is illegal and illegality is a— I'm talking about class. I'm talking collective. Collective whatever. It's different. No, no, it's not whatever. It isn't different. It's an opt-in situation. Everybody who wants to be a party can be a party in an opt-in situation. And the union, which is the exclusive bargaining agent and the exclusive representative of each member of the union, is able to bring the lawsuit on behalf of a lot of different people. It's not a class action. It's still inconsistent with the fundamental attributes of arbitration as the Supreme Court articulated it in Concepcion. And that's why the holding of— You sided over a case where 10 different reinsurers brought 10 different arbitrations and we all consolidated them into one arbitration and one arbitrator. How can you say it's inconsistent with arbitration? The Supreme Court said it. You've done arbitrations? I don't think it matters whether— Sure it matters. The question is how can it be said, whether the Supreme Court says it in a kind of dictum or not, that any collective activity is inconsistent with the concept of arbitration when, as Judge Hellerstein points out, group arbitrations with multiple parties happen all the time? Now, I think one of your responses, which is quite appropriate, is going to be, but there was nothing in the contract of any of those parties to the arbitration that said the arbitration has to be individual. So I understand that distinction. But how can it follow that it's just inconsistent with the whole notion of arbitration to have anything collective? It just isn't. Whether the Supreme Court says so or not, I'm sorry. It's just, as a fact, wrong. With all due respect, the Second Circuit has to follow the Supreme Court, and that's the law of the land at this point. It's a dictum. It's not dictum. It was essential to the decision. It's an observation. It's an observation. When anybody who's involved in arbitration knows it's not so. I may not have been involved in arbitration, but I handled the Supreme Court. I'm sure you've been involved in arbitrations for the Commerce Department. I briefed that case in the Supreme Court. I lived that case. I know what the case was about. And it was essential to the decision that the court hold that class procedures, when not agreed to by the parties, are inconsistent with the fundamental attributes of arbitration. They could not have reached the decision they did without saying that. Can you address my analogy? A bettor makes an agreement with a bookie to pay the bookie $500 if the Yankees lose tonight. And it's part of the agreement that any dispute arising under this contract will be decided by our mutual friend, Rocky Balboa, in arbitration. And that's who you have to go to if you have a beef. Is that binding? If the Yankees do lose and the bettor seeks a declaratory judgment in a court that he doesn't have to pay because the contract was illegal, he has to go to Mr. Balboa? No, because I think in that case the added term is not what the court would regard as fundamental to arbitration. And that it would fall within the savings clause because that kind of bias in the selection of the arbitrator is— Parties mutually selected. He's their mutual friend. They both agree that this gentleman is going to be the arbitrator and he's going to decide the case. This is far more of an—it doesn't say how the arbitration is going to happen or how the arbitrator gets selected. It says if the court entertains that judgment, it is flatly disregarding the arbitration clause, isn't it? Well, if it's— And, of course, the arbitrator will have to decide whether it's an illegal contract or not. The fact that the underlying contract or promise is not enforceable is an argument you can make to the arbitrator. Here's the way the Supreme Court would analyze it based on Concepcion. The Supreme Court said in Concepcion that what is not permitted under the sort of neutral—the grounds for revocation in law or equity savings clause, what's not permitted is a ground that has a disproportionate impact on arbitration. That's the court's words. Okay. That's helpful. So that's how they would analyze it. And you're saying that something that prohibits collective action is much more of a problem for arbitration than it is for courts when courts would have all these collective possibilities and remedies that are being taken away from them. Well, what the court said in leading up to that conclusion was it analyzed a requirement that full discovery be provided or that all of the rules of evidence be applied or that there be a jury of 12 lay arbitrators. Those are all hypotheticals. And the court said in all of those circumstances, that has a disproportionate impact on arbitration because those are already the sort of baseline in litigation. So it's only arbitration on which it's being imposed because they already exist in litigation. And the courts said the same thing is so of class actions. So that's sort of the analysis in the opinion. You don't look just about whether it's required in both. You look at whether it's a change to one that isn't a change to the other. Okay. I think I understand the position. Thank you very much. We'll hear from Mr. No, we've kept you well over the time that was allotted. Thank you. Thank you. A few quick points. First, there was an unfair labor practice charge filed in this case. It went up to the board on stipulated facts. When the board decided to participate as amicus on behalf of the plaintiff, the board represented to this court on page 2, and this is its policy of its brief, that it will give preclusive effect to this court's decision in the unfair labor practice charge. So it has stayed all proceedings on the unfair labor practice charge until this court rules, and it has agreed to be bound by this court's rulings. Well, how would it be bound by this court's ruling? We're not addressing whether it's an unfair labor practice, are we? Because the board does not participate as amicus in cases that involve issues that are before them unless it gives up its right to adjudicate the issue and agrees to be bound as a prudential matter. Yeah, okay, being bound. So it's as a prudential matter, not because it's technically bound. As a prudential matter, you lose in the NLRB because you and they both preferred to have them here rather than adjudicating the thing as an unfair labor practice. It's the board's decision. Whatever. Okay. Secondly, of course, class arbitration is common. The AAA and JAMS both have extensive rules governing how their arbitrators determine class arbitrations. And, in fact, we cited the AAA website that lists all of the employment as well as consumer arbitrations that proceed on a class action basis. The Norris LaGuardia Act and the National Labor Relations Act certainly aren't antithetical to arbitration. And neither the position that we're taking nor the position that the board is asserting undermines arbitration. Right. It's the Steelworkers Trilogy, for example. Of course. Justice Brennan said arbitration is at the heart of our labor policy. That's right. All we're saying is you cannot strip workers through individual contracts of their rights to engage in considered activity. We heard no answer to the argument, for example, that if the employer were right here, the employer could force any individual to give up any other right to engage in collective activity. The argument seems to be that the policy of arbitration trumps the National Labor Relations Act. Right. And it doesn't any more than it trumps any other federal statute. So if you had a policy that said, for example, that women would be entitled to three arbitrators in arbitration but men would only be entitled to one arbitrator or some other difference that might violate Title VII, the fact that it's in an arbitration context would somehow immunize it from the protections of the federal statute. And that has never been the law. And this court ultimately has to determine whether there's, in fact, a conflict. If so, it has to reconcile them. But the Seventh Circuit was right. There is no conflict because of the Savings Clause, Section 2. Thank you very much. Oh, I'm sorry. I just want to ask you one other question because I sort of put words in your mouth and I want to make sure that I may be wrong about it. I take it your argument would be that actually there is a right to a class action, that even if there were an arbitration that permitted collective action, at least some of the things you've said, collective action in the arbitration, at least some of the things you've said, like, they can't pick and choose which collective actions you can do, would lead to a conclusion that the employee would have an unbridled right to go to court and file a class action, even if the employee had agreed to an arbitration clause that allowed collective arbitration. City Disposal System says that you can't restrict one form of collective activity in favor of another. Our position is that these claims can be arbitrated or they can proceed in court. We're neutral as to that. The point is you can't deprive people of their Section 7 and NLGA Sections. Well, when you say you're neutral as to that, now, maybe you'd have to face this for this case, and you can say, well, I'd make up my mind if it came to that. But is it not a consequence of at least some of your arguments that there would always be a right to go to court because that is one form of collective action and a contract can't dictate which form it takes? As O'Charley says and as the Supreme Court has held in construing arbitration as just another form, if we accept that, which we might say is a fiction, but if we accept that arbitration is another form, then we have to be neutral as to where it is. The employer can say these disputes, if they are presented on a considered action basis, must proceed in arbitration or may proceed in court, just like FINRA, the Financial Industry Rules Permit. I was right in saying you're not arguing that there is some absolute right to a class action in a court. But there is a right to pursue the opportunity to seek class relief and concerted relief and joint activity in a satisfactory, acceptable, comparable forum, whether that's arbitration or the court. Collective adjudication. Collective adjudication, that's correct. All right. Thank you all very much. Thank you. And since the only other – we'll reserve decision. No rebuttal, Your Honor. I just want to say that he's corrected me about the unfair labor practice. I don't think it's dispositive, but I'm not in the business of making misrepresentations. I don't know that it has anything to do – no, certainly no – You spread a signal, Your Honor. No offense was taken. All right. The only other – we'll reserve decision in this case. The only other thing on the calendar is on submission. The clerk will adjourn the court. And thank you very much for the interesting argument.